Mahlon D. GREEN, Plaintiff,

v.

James B. McKEON et al., Defendants.

Civ. A. No. 36790.

United States District Court,
E. D. Michigan, S. D.

Oct. 21, 1971.

Barton, Whall & Perry, Livonia, Mich., for plaintiff.

Russell W. Schmidt, Wayne, Mich., for defendants.

## OPINION

KEITH, District Judge.

This action was instituted by Mahlon Green, a registered elector and resident of the City of Plymouth, Michigan, individually and for all others similarly situated. Defendants McKeon, Slider, and Lowe, are respectively the Mayor, the Clerk of the City, and the City Attorney of Plymouth and simultaneously all three serve as members of the Defendant Elections Commission of the City.

Jurisdiction of this court is properly invoked by plaintiff under 28 U.S.C.A. §§ 1343(3), 2201, 2202 asserting a denial of his 14th Amendment Rights.

This court has determined that the instant matter is properly postured as a class action under Rule 23 of the Federal Rules of Civil Procedure and that it is therefore proper to consider the rights of the qualified electors of the City of Plymouth.

At the inception of this action plaintiff was a registered elector and resident of the City of Plymouth. On June 18, 1971 plaintiff attempted to file a nominating petition with defendant clerk for the office of City Commissioner pursuant to the City Charter. This Charter provides, in part

"Section 4.4 Except as otherwise provided in this charter, an elector of the city shall be eligible to hold elective or appointive office, if he shall have been

a resident of the city for two years immediately prior to the date of his election or appointment to office, . . . . To be eligible to hold an elective office, a person shall also have been, for a period of two years prior to the date of his election or appointment to office, the owner of property located within and assessed for taxes by the city. In the case of appointive officers, the Commission may, by a two thirds vote, waive the requirement of residence in the City at the time of appointment: Provided, that each person for whom such requirement is waived shall become a resident of the city within one year following this appointment and shall remain a resident of the city during the entire time that he holds office in the city government. Failure so to become a resident of the city shall create a vacancy in the office to which any such person was appointed."

Plaintiff failed to satisfy either the requirement of two years residency or property ownership and was therefore determined to be ineligible to file his nominating petition on June 15, 1971.

■■ The broad question presented for this court's determination is whether the Plymouth City Charter requirement of two years residency and property ownership as a condition precedent to standing for elective office violates the equal protection clause of the Fourteenth Amendment to the United States Constitution.

### I

Counsel's arguments focus on whether the court is to apply the so called "reasonable basis" or "compelling interest" test in determining the validity of the charter provision in question. Although it is not clear from the briefs submitted, it seems that defendants rely on Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485, Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567, McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393, and Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88

L.Ed. 497 in support of their position that this court follow the "reasonable basis" test. Plaintiff, on the other hand, contends that the proper measure is the "compelling interest" standard emanating from a recent line of U. S. Supreme Court cases and recently applied by a three judge court of this circuit in Mogk v. City of Detroit, 335 F. Supp. 698 (1971).

Concomitantly defendants also argue that the residency requirement in the charter is entitled to a "strong presumption in favor of [its] constitutionality" because the qualification is uniform in that all potential candidates for election must satisfy the requirement.

With respect to the property holding requirement in the aforequoted charter provision, it becomes difficult to ascertain exactly what position defendants take as to its constitutionality. At one point they fervently argue that under the reasonableness test this requirement should certainly withstand constitutional attack because it is, ipso facto, reasonable since the voters of the city have continuously re-enacted that particular provision. No authority is however cited in support of this reasoning. Thereafter defendants state that "[i]nsofar as ownership of property assessed for taxes may be concerned it seems settled in this jurisdiction, and nationally, that property ownership as a qualification for exercise of the elective franchise is 'invidious discrimination' as viewed from the standpoint of [the compelling interest test] if the defendant has not affirmatively demonstrated such interest." Defendants then go on to "concede that such compelling interest is not demonstrated in the pleadings on file."

### II

■ The threshold question that must be determined is whether the relevant test herein is to be the "reasonableness" or "compelling interest" test. For the reasons that follow this court is of the opinion that it is required to apply the compelling interest standard in its resolution of this controversy.

In Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583, the Supreme Court concluded that where restrictions on the exercise of the franchise were involved the stricter standard of the "compelling state interest" was to be the measure. The Court stated that

"Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government. . . . Statutes granting the franchise to residents on a selective basis always pose the danger of denying some citizens any effective voice in the governmental affairs which substantially affect their lives. Therefore, if a challenged statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest. See Carrington v. Rash, [380 U.S. 89, at 96, [85 S.Ct. 775, 13 L.Ed.2d 675]].

"And, for these reasons, the deference usually given to the judgment of legislators does not extend to decisions concerning which resident citizens may participate in the election of legislators and other public officials. Those decisions must be carefully scrutinized by the Court to determine whether each resident citizen has, as far as is possible, an equal voice in the selections. Accordingly, when we are reviewing statutes which deny some residents the right to vote, the general presumption of constitutionality afforded state statutes and the traditional approval given state classifications if the Court can conceive of a 'rational basis' for the distinctions made are not applicable. See Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 670, [86 S.Ct. 1079, 16 L. Ed.2d 169]. The presumption of constitutionality and the approval given 'rational' classifications in other types of enactments are based on an assumption that the institutions of state government are structured so as to represent fairly all the people. However, when the challenge to the statute is in effect a challenge of this basic assumption, the assumption can no longer serve as the basis for presuming constitutionality . . . ."

■ This case thus makes it quite clear that in cases restricting the right to vote the compelling interest standard is the proper yardstock for judicial scrutiny.[1] We are of a view similar to that expressed by Chief Judge Freeman of this District in Stapleton v. Clerk for City of Inkster, 311 F.Supp. 1187 (1970) where he opined that

". . . the reasons given for requiring the compelling interest standard in voting cases are equally applicable to cases challenging qualifications for public office; in both situations the challenge is directed to the assumption that the institutions of state government are structured so as to fairly represent all the people.

"Thus, the City must demonstrate a compelling interest to justify the ownership of real property in the City as a qualification to hold office and the City does not have the advantage of the usual presumption that the Charter is constitutional."

Judge Freeman felt compelled to analyze the officeholding requirement therein under both standards because the U.S. Supreme Court had declined to reach the question of precisely which test should be applied. However, since the Stapleton, id., decision a three Judge panel

---

1. See also, Wilkins v. Ann Arbor City Clerk, 385 Mich. 670, 189 N.W.2d 423, (1971), where the Michigan Supreme Court held, inter alia, that plaintiffs who were refused registration for the purpose of voting need not demonstrate an absolute denial of the right to vote in order to require the state to show a compelling interest but need only show that a burden has been placed upon this precious right in order to avail themselves of the Equal Protection Clause.

from this circuit has given an answer to that question. In *Mogk, supra,* the court concluded that the proper test in candidate qualification controversies was indeed the compelling interest test.

The controversy in *Mogk* was centered on a requirement in the Michigan Home Rule Act, Mich.Comp.Laws, § 117.18 (M.S.A. § 5.2097) that a candidate for a municipal office reside in that municipality for three years preceding the forthcoming election. The plaintiff attempted to register as a candidate for the City Charter Commission but was rejected by the defendants on the grounds that he failed to satisfy the above stated requirement. The Court rejected the application of the 'reasonableness' test stating that

> "[i]t appears to us . . . that not only the Supreme Court of the United States but the Congress as well has discarded the 'reasonableness' test in favor of the 'compelling state interest' test. See the Voting Rights Amendment Act of 1970, Pub.L.No. 91–285, 84 Stat. 314; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L. Ed.2d 600; Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583; Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647, . . ." (remaining citations omitted).

Thus we hold that the proper test for measuring the candidate qualifications provision in the Plymouth City Charter is the compelling interest test.

### III

Finding that the compelling interest standard is the proper measure, *Kramer* and *Mogk, supra,* require that we "meticulously scrutinize the evidence" to determine if the City has sustained the burden of the test with respect to the restrictive classifications.

■■ We preface the following discussion by restating the well settled, and in this case, undisputed, principle that there is no constitutional right to be elected to public office and the equally clear principle that there is a constitutionally protected right to stand for election without the burden of invidious discrimination. Turner v. Fouche, *supra.*

Defendants concede that there is no compelling interest in support of the property ownership requirement. (Defendants' supplemental brief, pp. 1 & 2). This court is in accord with defendants' concession and thus holds that the property ownership requirement of the Plymouth City Charter violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in that it creates an invidious discrimination upon the "federal constitutional right [of plaintiff and those similarly situated] to be considered for public service . . ."; *Turner,* id. We further hold that the property requirement does not pass constitutional muster even under the traditional standard of reasonableness because it creates a qualification based on wealth, Phoenix v. Kolodziejski, 399 U. S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523, Harper v. Virginia State Bd. of Elections, *supra,* Stapleton v. Clerk for City of Inkster, *supra.*

■ It is well settled that a finding of unconstitutionality with respect to one provision in a statute or other enactment does not thereby, *a fortiori,* invalidate the remaining portion. With this proposition in perspective we turn now to the more difficult constitutional question presented by the durational residency requirement in the Plymouth City Charter.

This court is fully cognizant of the factual distinction between *Mogk, supra,* Bolanowski v. Raich, 330 F.Supp. 724, *Stapleton, supra,* and the case at bar. We are, however, of the opinion that this is the classic case of a distinction without a difference. The basic question posed in those cases and in the instant case differs not; does the municipality sustain the burden of the compelling interest standard with respect to the qual-

ifications imposed on the right to stand for public office?

We are persuaded of the soundness of the Mogk panel's reasoning when it indicated that

"[t]he Supreme Court, has in election cases, dealt most often with voters' rights rather than the rights of persons to become candidates for public office, but it seems to us that they are, in the main, inextricably intertwined. [Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24] hold that a citizen has a right to vote *effectively* and, by logical extension, that means he is to be given a wide latitude in his choice of public officials. His right to support a candidate of his choice— including himself—cannot be arbitrarily restricted." [*Emphasis supplied*].

The justification offered by the City of Plymouth for restricting the right of a registered elector to stand for office is that a two year residency requirement assures that the candidate will be sufficiently knowledgeable of the problems of the City and presumably more able than one who has resided there for less than two years. Defendants further argue that this requirement is necessary to keep non-residents from running for office. It is also said that the requirement is not discriminatory because it applies to all potential candidates equally.

We find no compelling city interest or merit in any of these contentions with respect to the two year residency requirement of § 4.4 and therefore hold that it is unconstitutional, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

Plaintiff and those similarly situated have an unqualified right to cast an effective ballot. To deny plaintiff the right to stand for elective office on the basis of the two year residency require-. ment deprives him, and all those who de-

sire to vote for him, the efficacy of their franchise.

In our opinion a candidate is not like a fine vintage wine. His years of residency in a particular community do not necessarily make him a better candidate. As the Court in *Mogk, supra,* pointed out

"The basic scheme in any election system . . . is designed first, to identify and expose to public scrutiny those who come forward as candidates, and ultimately to select from them those who shall hold public office. Generally the time table of the state election machinery will suffice to accomplish the first objective. It is a matter of common knowledge that those who seek public office go to considerable effort and expense to secure exposure, and it may be safely assumed that opponents in an election race will seek out and make known the shortcomings of their opposition and assert their own superior qualifications for a particular post. If a short sojourn in the community is considered to be a disqualification the electorate may voice its sentiment at the ballot box."

The provision here, even though applied equally to all candidates, does not satisfy "the exacting standard of precision we require of statutes which selectively distribute the franchise." *Kramer, supra.* The rationale of *Bolanowski, supra,* is immediately relevant; Judge Feikens pointed out that the requirement there did not satisfy the standard because it did not really relate to it. It was "precise in its purpose . . . [but] vague in its function." The Court continued

"Whether the requirement of [the] section denies those who desire to vote for plaintiff or someone similarly situated, the equal protection of the law depends on whether all those potential candidates excluded . . . are in fact substantially less interested in and knowledgeable about the community than those the section allows to

file. In other words, the classification must be tailored so that exclusion of [plaintiff] and members of his class is necessary to achieve the articulated [municipal] goal. *Kramer*, [*supra*]."

This court is of the view that the Plymouth provision similarly fails to meet the standard. While the goal of insuring a candidate's familiarity with community problems may be desirable, it cannot be utilized to subvert the franchise rights of an entire class of voters who may choose to vote for him nor can the provision be allowed to subvert plaintiff's individual constitutional right to stand for office.

There is no suggestion that Plymouth is such an inordinately complex community that plaintiff, or those similarly situated, require two years to familiarize themselves with the city. In any event it seems to us that the extreme solution here employed which nullifies the effective exercise of the ballot must be subrogated to the precious fundamental rights involved in this litigation. As Chief Judge Freeman of this district stated in *Stapleton*, *supra*, and as was reiterated in *Mogk*, *supra*.

"[i]t is unquestioned that a voter has a constitutionally protected right to vote for the candidate of his choice and have his vote counted. Reynolds v. Sims [*supra*]. It is also established, as pointed out previously, that a person has a constitutionally protected right to be considered for public office without the burden of invidiously discriminatory disqualifications.

. . . It seems clear to this court that a restriction upon who may be a candidate necessarily affects the efficacy of a person's vote. The effectiveness of the franchise can just as certainly be curtailed by restricting the group from whom candidates may be drawn as by restricting those entitled to a vote or malapportioning a legislative body."

This court is of the opinion that, whether viewed from the standpoint of either the voter or the candidate, the city of Plymouth has failed to show a compelling interest for the two year residency requirement. *Mogk*, *supra*. The import of Shapiro v. Thompson, *supra*, to this point is capsulized at 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600:

"At the outset, we reject appellants' argument that a mere showing of a rational relationship between the waiting period [prior to eligibility for welfare assistance] and . . . admittedly permissible state objectives will suffice to justify the classification. [citations omitted]. The waiting-period provision denies welfare benefits to otherwise eligible applicants solely because they have recently moved into the jurisdiction. But in moving from State to State or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional. . . ." [emphasis original].

This court finds no merit in the defendants' argument that a finding of unconstitutionality with respect to the two year residency requirement will open the floodgates of the electoral process to non-residents. Nothing in this opinion is to be construed as denying the City of Plymouth the right to fashion constitutionally acceptable requirements to stand for office, e. g. being a qualified elector.

For the aforesaid reasons this court holds that § 4.4 of the Plymouth City Charter is void in its entirety as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

It is so ordered.