Michael O. BILLINGTON, Plaintiff,

v.

Albert HAYDUK and Joseph McNamara, as Commissioners of the Board of Elections, Westchester County, William Bruns and Marianne Oldi, as Deputy Commissioners of the Board of Elections, Westchester County, and Francis A. Nicolai, Defendants.

No. 77 Civ. 4380.

United States District Court,
S. D. New York.

Oct. 27, 1977.

See also, D.C., 439 F.Supp. 971.

Jeremiah S. Gutman, Levy, Gutman, Goldberg & Kaplan, New York City, Westchester Civil Liberties Union, for plaintiff.

David N. Brainin, Westchester County Atty., White Plains, N.Y., for defendants Hayduk, McNamara, Bruns and Oldi; Jonathan Lovett, Deputy County Atty., Lester Steinman, Asst. County Atty., of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This action challenges the constitutional validity of Article III, Section 15 of the Westchester County Charter ("the Charter") insofar as it requires that "[t]he county executive shall at all times be a qualified elector of [Westchester] county, and shall have been a resident freeholder of the county for at least five years prior to his election." Plaintiff is the United States Labor Party nominee for the office of Westchester county executive. He owns no property in Westchester County and has resided there since mid-May 1977. On August 29, 1977, his nominating petition as a candidate for the office of county executive in the upcoming general election, to be held on November 8, 1977, was rejected by the Westchester County Board of Elections, the Commissioners and Deputy Commissioners of which are defendants herein, because he did "not fulfill the five year residency qualification" mandated by the Charter.

On September 6, 1977, plaintiff commenced this action claiming that the actions of defendants in invoking the provisions of the Charter to exclude his name from the ballot as a candidate for county executive deprived him of due process and equal protection of law, as well as his constitutional rights to travel, associate and vote in violation of the First and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1985. That same day he moved by order to show cause for a preliminary injunction. A hearing on this motion was held on September 12, 1977, and by opinion and order dated September 15, 1977, in which I found plaintiff to be a *bona fide* Westchester resident, defendants were preliminarily enjoined from enforcing or attempting to enforce the Charter provision against plaintiff to exclude his name from the ballot. Defendants have opted not to appeal from this determination. Instead, the parties have agreed that the hearing on the preliminary injunction be treated as a trial on the merits of this action and have submitted a stipulated set of additional facts for my consideration.[1] On the basis of this record, both sides have moved for judgment.

---

1. Although defendant Nicolai, who filed an objection to plaintiff's nominating petition with the Board of Elections on August 29, 1977, did not appear at the prior hearing, he has joined in this stipulation.

In my opinion and order of September 15, 1977, I rejected defendants' contention, presently raised in their answer, that plaintiff has an adequate state law remedy which would bar his seeking federal injunctive relief. Implicitly rejected, as well, was defendants' objection to this action on abstention grounds. With those threshold objections disposed of, I turn to a consideration of the merits.

The sole question for resolution is whether the Charter's requirement that the Westchester county executive be a "resident freeholder of the County for at least five years prior to his election" passes constitutional muster. Defendants freely concede that a freeholder requirement for public office is constitutionally invalid. *Green v. McKeon*, 335 F.Supp. 630 (E.D.Mich.1971), aff'd, 468 F.2d 883 (6th Cir. 1972); *Landes v. Town of North Hempstead*, 20 N.Y.2d 417, 284 N.Y.S.2d 441, 231 N.E.2d 120 (1967). *See Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 28 L.Ed.2d 567 (1970). They argue, however, that the term "freeholder" may be severed from the Charter provision, thereby rendering the requirement a constitutionally valid one of durational residency. It is their position that plaintiff was disqualified from office merely for failing to meet this five year residency requirement and not out of considerations of property ownership. Plaintiff contends that the phrase "resident freeholder" in the Charter provision does not contain severable terms, and that, in any event, a durational residency requirement is impermissible.

In my opinion and order of September 15, 1977, I indicated that the phrase "resident freeholder" appeared to be a single qualification and that a complete consideration of the merits of the issue of severability mandated an analysis of the legislative history and purposes of that requirement. This background information is now before me.

The current Westchester County Charter was enacted by the New York State Legislature as Chapter 617 of the Laws of the State of New York of 1937. Contained in Article XIX, Section 137 of that enactment, and presently in full force and effect, is the following provision:

§ 137. *Invalidity.* The invalidity of any provision, article, section, clause, phrase or word in such alternative form of government, as prepared or as adopted, or of this act, shall not affect the validity of any other provision, article, section, clause, phrase or word.

■ The test in determining the appropriateness of severance is whether the Legislature would have desired the particular law or provision enacted and enforced with the invalid language excised. *Champlin Refining Co. v. Corporation Commission*, 286 U.S. 210, 234, 52 S.Ct. 559, 76 L.Ed. 1062 (1932); *People ex rel. Portland Co. v. Knapp*, 230 N.Y. 48, 60, 129 N.E. 202 (1920), cert. denied, 256 U.S. 702, 41 S.Ct. 624, 65 L.Ed. 1179 (1921); *People v. Mancuso*, 255 N.Y. 463, 175 N.E. 177 (1931). The inclusion of the above saving clause discloses a strong legislative preference for severance and raises the presumption that the New York State Legislature intended the elimination of constitutionally defective language and the enforcement of the remainder as though originally enacted in that manner. *Champlin Refining Co. v. Corporation Commission, supra*, 286 U.S. at 235, 52 S.Ct. 559. *See also, Watson v. Buck*, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941).

To transform into a conclusion the presumption that the State Legislature would have desired the durational residency requirement to stand despite the elimination of the invalid freeholder requirement, defendants point to the Charter's predecessor enactments containing residency, but not freeholder, requirements and to the legislative comments pertaining to the inclusion of the dual qualification in the drafts of the present Charter. On the basis of the evidence thus adduced, it would appear that the invalidity of requiring freeholder status would not affect the five-year residency requirement, if constitutionally valid, notwithstanding the necessity of grammatically metamorphosing the language of the provision to reach that result.

However, before this determination can be made, the constitutional permissibility of requiring five years' residence for the office of county executive, an issue left open in my previous opinion and order, must be examined. Defendants contend that the Supreme Court's summary affirmances of the three-judge court decisions in *Sununu v. Stark,* 383 F.Supp. 1287 (D.N.H.1974), *aff'd mem.,* 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 435 (1975); *Chimento v. Stark,* 353 F.Supp. 1211 (D.N.H.1973), *aff'd mem.,* 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973), and *Hadnott v. Ames,* 320 F.Supp. 107 (M.D.Ala.1970), *aff'd mem.,* 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1971), rejecting constitutional challenges to durational residency requirements, compel the same result in this case. Although summary affirmances of cases within the Supreme Court's obligatory appellate jurisdiction constitute adjudications on the merits of the issues on appeal, this circuit recognizes the necessity of careful analysis of each case to determine the issues actually before the Court. *Mercado v. Rockefeller,* 502 F.2d 666, 671 (2d Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975). Such an analysis of *Hadnott, Chimento* and *Sununu* distinguishes those cases from that here presented.

*Hadnott* involved a challenge to Alabama's one-year circuit residency requirement for circuit judges, which was upheld on the basis of Alabama's "compelling state interest in imposing a substitutional pre-election residence requirement." *Hadnott v. Ames,* 320 F.Supp. at 119, 124. Since the purported candidate had never resided in the circuit, however, the court expressly left untouched the question of "whether the period of one year is too long, thus unconstitutionally overreaching the implementation of the state's compelling interest." *Id.* at 119. *Chimento* and *Sununu* sustained New Hampshire's gubernatorial and senatorial seven-year state residency requirements in the face of attacks mounted on the grounds here asserted, as justified by the state's compelling interests in insuring familiarity between the candidate and his constituency and preventing political car-

petbagging. In upholding the length of these requirements as permissible infringements on the right to participate in the electoral process on equal protection grounds, however, the *Chimento* and *Sununu* courts overwhelmingly stressed that the seven-year mandates were contained in the New Hampshire Constitution as originally framed, and thus were appropriate for elimination or change only by the voters through the constitutional amending process. Indeed, the *Sununu* court emphasized that a proposed reduction of the senatorial requirement from seven to four years had been considered and rejected by the voters in 1966 and was to be again considered in 1978. Judicial interference in this process was deemed "presumptuous." *Sununu v. Stark,* 353 F.Supp. at 1291.

■ While it is clear that these cases stand for the proposition that states may validly impose some residence requirement for public officeholding, without offending the equal protection guarantee, it is equally clear that the breadth of that requirement must be tailored to the state's legitimate objectives—here measured in terms of the state's compelling interest—in order to withstand constitutional scrutiny. *See Dunn v. Blumstein,* 405 U.S. 330, 343, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Sununu v. Stark,* 353 F.Supp. at 1290–91. Since a five-year county residency requirement for Westchester County Executive is not contained in the New York State Constitution, I am not bound by the generous degree of judicial restraint exercised in *Chimento* and *Sununu* in scrutinizing the permissible breadth of this qualification. Additionally, unlike *Chimento* and *Sununu,* I am not here confronted with a state constitutional requirement for "the highest elective officer in the State" for which "[t]he rationale asserted by the State . . . carries far greater weight than if it applied to candidacies for lesser public offices," *Chimento v. Stark,* 353 F.Supp. at 1216; but rather with that mandated by state statute for a "lesser public offic[e]."

Defendants have detailed the current operations and obligations of Westchester County, as well as the myriad of duties and powers with which the county executive—Westchester's chief executive and administrator—is charged. They argue that given the complex nature of both the county and the office, Westchester residents and taxpayers are entitled to be ensured of the officeholder's familiarity with the constituency and with the county's problems, responsibilities and operations, and to be protected from frivolous or itinerant candidates who may impair the integrity of the electoral process. Although these interests are compelling ones, there is no indication that they could not be validly served by alternate means of narrower breadth, or, simply, by a shorter and less restrictive residence requirement.

Considering the size and nature of Westchester County,[2] it would appear superfluous to require five years' county residence in order for a candidate to acquaint himself or herself with the needs and obligations of the county and the voters. A purported candidate clearly could accomplish these ends not only in a shorter period of time but also without county residence. Unlike the rural New Hampshire of *Chimento* and *Sununu,* the County of Westchester is part of the megalopolis surrounding New York City. Plaintiff was a resident of the City of New York for a period prior to the time that he moved to Westchester. The problems of Westchester have been displayed and discussed in the media so much that an individual, such as plaintiff, not residing within the County for the overly-broad period of five years, but residing within New York City, would have knowledge thereof.

On the other side of the coin, requiring five years' county residence appears unrelated to whether the voters could satisfy themselves of the candidate's sincerity and knowledgeableness. The population of Westchester County is so large that such a

provision would not insure that the voters would know the various positions which a person might take upon becoming a candidate for public office.

Thus, it is clear that the durational residency requirement herein involved is merely arbitrary, and that defendants have utterly failed to demonstrate, as they must that it is the least drastic encroachment on the candidate's right to seek public office.

The apparent overbreadth of the residency requirement and defendants' failure to demonstrate a necessity therefor, leads me to invalidate any five year county residency requirement as impermissible under the Equal Protection Clause. Accordingly, severing the Charter provision phrase "resident freeholder" into its constituent elements will not save the five year requirement. Since both elements are constitutionally invalid, the entire phrase must be stricken. Because of the Charter saving clause, however, the remainder of the provision, requiring the Westchester County Executive to be a "qualified elector of the County," shall stand.

Since I have determined that the requirement that the County Executive be a "resident freeholder of the county for at least five years prior to his election" is constitutionally invalid, defendants are enjoined from enforcing or attempting to enforce that requirement against plaintiff so as to exclude his name from the ballot as a candidate for the office of county executive in the election to be held on November 8, 1977.

IT IS SO ORDERED.

---

2. Westchester consists of 443 square miles, including 6 cities, 17 towns and 22 villages, and is densely populated, containing some 894,409 persons as of 1970. (See Exhibit 4 to affidavit of Samuel S. Yasgar.)