Michael O. **BILLINGTON,**
Plaintiff-Appellee,

v.

Albert **HAYDUK** and Joseph McNamara, as Commissioners of the Board of Elections, Westchester County, William Bruns and Marianne Oldi, as Deputy Commissioners of the Board of Elections, Westchester County, Defendants-Appellants,

and

Francis A. Nicolai, Defendant.

No. 475, Docket 77–7524.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1977.

Decided Nov. 2, 1977.

---

Jonathan Lovett, Deputy County Atty., White Plains, N. Y. (David N. Brainin,

Westchester County Atty., and Lester Steinman, Asst. County Atty., White Plains, N. Y., of counsel), for defendants-appellants.

Arthur Eisenberg, New York City (Jeremiah S. Gutman and Levy, Gutman, Goldberg & Kaplan, Civil Liberties Union, New York City, of counsel), for plaintiff-appellee.

Before FEINBERG, OAKES and GURFEIN, Circuit Judges.

PER CURIAM:

Michael O. Billington, a candidate of the Socialist Labor Party for the office of County Executive of Westchester County, sued Albert Hayduk and Joseph McNamara as Commissioners of the Board of Election of Westchester County, in the United States District Court for the Southern District of New York, for a declaration that § 15 of the Westchester County Charter, Chapter 617, Laws of 1937, is constitutionally invalid, and to enjoin the Commissioners from enforcing its requirements against him. Billington's nominating petition for the general election to be held on November 8, 1977, was rejected by the Westchester County Board of Elections. The decision of the District Court, Duffy, *J.*, was not filed until October 27, 1977, and we heard the appeal on the earliest possible date, October 31, 1977.

The Charter provision attacked reads: "The County Executive shall at all times be a qualified elector of the county and shall have been a resident freeholder of the county for at least five years prior to his election."

Billington is neither a freeholder nor a resident for more than five years. The district court held that the requirement that the County Executive be a freeholder of the County is severable from the requirement that he be a resident for at least five years prior to his election. It further held the requirement that the County Executive be a freeholder to be unconstitutional, a determination which is accepted by the County. Having determined that the statute is sev-erable, however, the district court addressed itself to the five-year residence requirement and held it also to be unconstitutional as a violation of the equal protection clause of the Fourteenth Amendment. The rejection of Billington's petition was enjoined and the Commissioners ordered to place his name on the ballot. The County appeals.

This case comes to us for decision only one week before the general election of November 8 and within a few days before the ballot would have to be redone if it is to be ready for election day. At present, under Judge Duffy's injunction, appellee's name appears on the ballot. We are asked to strike it from the ballot and reverse the judgment below. We are confronted here with an exigent time situation which does not permit us the luxury of a *Pullman* abstention, *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), to permit the state court to resolve the issue of severability. If the statute is not severable, all parties agree that the requirement that the County Executive be a freeholder, that is, an owner of real property, alone makes the statutory qualification unconstitutional.

The question of severability involves the interpretation of a state statute adopted in a referendum by the people of the county as their County Charter. In the ordinary case we would abstain from deciding the issue of severability to permit the state courts to pass upon that question. In the present posture, there is no time for such interpretation by the state judiciary. Accordingly, we are compelled by circumstance to attempt, however unwillingly, to determine whether Billington's name may remain on the ballot, without such prior guidance by the state court.

We cannot, in good conscience, say that we are convinced that the state court, if faced with the problem, would declare the statute severable. Nor do we have time to delve into the legislative history in detail. We are given enough material in the briefs and the stipulation of the parties, however, to recognize the difficulty of our holding

summarily that the provisions are severable. Though there is a general separability section in the Charter, the scant legislative history available confirms our hesitation.

The 1925 Westchester County Government Act (Article III § 40) (c. 587, L.1925) provided for a County President (now known as "County Executive") who was required to be a resident of the county for at least five years but without any requirement that he be a freeholder. This Act was rejected in a referendum in the 1925 general election. The same language and the same rejection occurred in 1927. In 1936 and 1937, drafts of the proposed charter were submitted to the Westchester County Board of Supervisors for their approval. The original draft submitted by the Commission on County Government contained neither a resident nor a freeholder qualification. The County Attorney suggested that a ten-year residency requirement and a five-year freeholder requirement be added to the Charter. The revised draft, ultimately enacted, provides that the County President should be a resident freeholder for at least five years. Specifically, an amendment was introduced by certain members of the Board to delete the word "freeholder" from the section, but that amendment was defeated. This seems to us, while not entirely unequivocal, to indicate that the requirement that the County Executive be both a freeholder and one who has resided in the county for five years was adopted by way of compromise between no freeholder requirement at all and a requirement of residency for more than five years. Moreover, even if we were disposed to hold the freeholder requirement to be separable from the duration-of-residency requirement, we would be merely hazarding a guess as to what the New York Court of Appeals would do as to severability in the next case. On the other hand, since doubt as to the residency requirement has now been raised under the federal constitution, the charter may be amended, or the New York Court of Appeals can make a definitive judgment upon its interpretation if a resident for less than five years seeks election another time.

We, therefore, conclude that upon the record before us we are not disposed to uphold a state statute on the debatable ground that it can be saved on the basis of separability. Since it is conceded that the freeholder requirement is without question unconstitutional, the entire provision for qualification of the County Executive falls. We, accordingly, do not reach the question of the constitutional validity of the five-year duration-of-residency requirement, though we should indicate that we have grave doubt as to whether this matter is not foreclosed by the action of the Supreme Court in summary affirmances of five- and seven-year residency duration statutes in *Sununu v. Stark*, 383 F.Supp. 1287 (D.N.H. 1974), *aff'd mem.*, 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 435 (1975); *Kanapaux v. Ellisor*, unreported (D.S.C.), *aff'd mem.*, 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974); and *Chimento v. Stark*, 353 F.Supp. 1211 (D.N.H.), *aff'd mem.*, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973).

We have written our opinion narrowly and we decide, on the limited basis we have stated, only the qualification of the candidate for County Executive in the November 8, 1977 election in Westchester County.

The judgment is affirmed.