Norman M. **ROBERTSON,** John Coiro, Eugene, Kulick, Garry Colletti, Jay R. Schwartz, Dennis E. Gonzalez, Gerald H. Zecker, Plaintiffs,

v.

Larry **BARTELS,** Richard Codey, Sonia Delgado, Thomas Giblin, Lewis Greenwald, Bonnie Watson Coleman, in their official capacities as Members of the State of New Jersey Apportionment Commission, the State of New Jersey Apportionment Commission, Deforest B. Soaries, Jr., Secretary of State of the State of New Jersey, and John Farmer, Attorney General of the State of New Jersey, Defendants.

No. CIV A 01–2024.

United States District Court, D. New Jersey.

July 19, 2001.

Norman M. Robertson, Little Falls, NJ, pro se.

James A. Robertson, Kalison, McBride, Jackson & Murphy, P.A., Liberty Corner, NJ, for Plaintiffs John Coiro, Eugene Kulick, Gary Colletti, Jay R. Schwartz, Dennis Gonzalez and Gerald H. Zecker.

Paul M. Smith, Sam Hirsch, Jenner & Block LLC, Washington, DC, Robert E. Levy, Nomi Lowy, Scarinci & Hollenbeck, Secaucus, NJ, Leon J. Sokol, Steven Siegel, Sokol, Behot & Fiorenzo, Hackensack, NJ, for Defendants New Jersey Apportionment Commission, Richard Codey, Sonia Delgado, Thomas Giblin, Lewis Greenwald, Bonnie Watson Coleman & New Jersey Apportionment Commission.

Robert L. Clifford, McElroy, Deutsch & Mahoney, Morristown, NJ, for Defendant Larry Bartels.

John J. Farmer, Jr., Attorney General, Donna Kelly, Senior Deputy, Attorney General, Mark J. Fleming, Assistant Attorney General, Mark Turner Holmes, Deputy Attorney General, Pamela E. Gellert, Deputy Attorney General, Office of the Attorney General of New Jersey, Department of Law & Public Safety, Division of Law, Richard J. Hughes Justice Complex, Trenton, NJ, for Defendants Secretary of State & Attorney General of State of New Jersey.

## OPINION

DEBEVOISE, Senior District Judge.

### I. BACKGROUND

Originally this matter came before the court on plaintiffs' complaint seeking injunctive relief to prevent defendants from implementing a redistricting plan for New Jersey's Senate and General Assembly districts (Counts One and Two) and challenging New Jersey's one-year district residency requirement as a requisite for an individual to be eligible to run for legislative office. Because plaintiffs challenged the constitutionality of the apportionment

of a statewide legislative body, pursuant to 28 U.S.C. § 2284 the case was assigned to a three judge court.

Defendant moved before that court for summary judgment on all three counts. The three judge court heard oral argument on plaintiffs' application for injunctive relief (the parties having agreed to consolidate the preliminary and permanent injunction hearings) and on defendants' motions for summary judgment.[1]

At the conclusion of the hearing the three judge court orally granted defendants' motion for summary judgment on the first and second counts of the complaint dealing with the redistricting issues, reserving judgment on the third count pending further briefing by the parties on whether that count should be referred to a single judge for disposition.

In its formal opinion, *Robertson v. Bartels,* 2001 WL 726707 (D.N.J.2001) the three judge court articulated its reasons for granting defendants' motion for summary judgment on the first and second counts. As to the third count the three judge court stated, "[w]e think that it is plain that the redistricting and residency issues are so distinct that the sound exercise of discretion should lead us to refer the voting rights issue to a single judge for disposition." *Id.* at *16. An order was entered to that effect, and the remaining portion of the case was referred to me. Because I was a member of the three judge court I heard the oral argument on the defendants' motion for summary judg-

ment on the third count and thus no further hearings were necessary.

## II. *THE FACTS*

The remaining parties having an interest in this case are plaintiffs Dennis E. Gonzalez and Jay R. Schwartz and defendant John Farmer, Attorney General of the State of New Jersey.[2]

The one-year district residency requirement which is challenged in this case is set forth in Article IV, § 1, ¶ 2 of the New Jersey Constitution which provides:

No person shall be a member of the Senate who shall not have attained the age of thirty years, and have been a citizen and resident of the State for four years, and of the district for which he shall be elected one year, next before his election. No person shall be a member of the General Assembly who shall not have attained the age of twenty-one years and have been a citizen and resident of the State for two years, and of the district for which he shall be elected one year next before his election. No person shall be eligible for membership in the Legislature unless he be entitled to the right of suffrage.

Gonzalez is, as he alleges, "a near lifelong resident of Passaic County, New Jersey." In January 2001 he moved from Paterson to Clifton. Under the legislative districting in effect at that time, *i.e.,* the districting in effect during the last decade, this move would have meant that he would not have been eligible for election to the General Assembly in 2001 because Pater-

---

1. The parties agreed, and the three judge court ordered that testimony taken in the related case of *Page v. Bartels,* 144 F.Supp.2d 346 (D.N.J.2001), would be admissible at the trial in this action and available for incorporation in the defendants' summary judgment motion.

2. By an order entered May 22, 2001 the Hon. Gerald H. Zecker was joined in this action as a party plaintiff. He has been an Assemblyman representing the 34th District. He remains eligible to run because he continues to reside in the newly configured 34th District. Thus he does not face the barrier caused by the residency requirement.

son was in District 35 and Clifton was in District 34. Adoption of the redistricting plan does not eliminate this barrier because Paterson and Clifton remain in Districts 34 and 35.

Schwartz is, as he alleges, "a near lifelong resident of the State of New Jersey," born and raised in the Borough of West Paterson. In March 2001 he moved from West Paterson to Little Falls. Under the former legislative districting this move would have made him ineligible for election to the General Assembly in 2001, as West Paterson was in District 35 and Little Falls was in District 34. Under the redistricting plan West Paterson has been moved to District 34 and Little Falls has been moved to District 40. Thus Schwartz remains ineligible to run for the General Assembly in 2001.

Both Gonzalez and Schwartz, by virtue of their moves, were ineligible to run for the General Assembly under the former districting plan, and the new districting plan did not cure their ineligibility by placing their old and new residences in the same district. In this action these plaintiffs challenge the constitutionality of the one year residency requirement.

### III. *DISCUSSION*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law". Fed. R.Civ.P. 56(c). In resolving a motion for summary judgment, it is necessary to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although plaintiffs advance free speech and

right to travel contentions, this case implicates primarily equal protection considerations:

[1] Durational residence laws penalize those persons who have traveled from one place to another to estabiish a new residence during the qualifying period. Such laws divide residents into two classes, old residents and new residents, and discriminate against the latter to the extent of totally denying them the opportunity to vote. The constitutional question presented is whether the Equal Protection Clause of the Fourteenth Amendment permits a State to discriminate in this way among its citizens.

*Dunn v. Blumstein,* 405 U.S. 330, 334, 335, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (footnote omitted).

Although *Dunn* dealt with the fundamental right to vote, the Supreme Court has held that restrictions on the right of persons to run for office can have an adverse impact on voters' right to vote, substantially limiting their choice of candidates. In those circumstances the state has impaired a fundamental right, and its action must be subjected to strict scrutiny:

Because the Texas filing-fee scheme has a real and appreciable impact on the exercise of the franchise, and because this impact is related to the resources of the voters supporting a particular candidate, we conclude, as in Harper, that the laws must be 'closely scrutinized' and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster.

*Bullock v. Carter,* 405 U.S. 134, 144, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

■ There exists "a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications," and a

state "may not deny to some the privilege of holding public office that it extends to others on the basis of distinctions that violate federal constitutional guarantees." *Turner v. Fouche,* 396 U.S. 346, 362–363, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). To determine if a residency law violates the Equal Protection Clause "we look, in essence, to three things: the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." *Dunn* 405 U.S. at 335, 92 S.Ct. 995.

The classification at issue here is, of course, persons who have lived in a particular district for a year or more and persons who have lived in a district less than a year, the former having the right to run for the State Assembly or Senate and the latter being deprived of that right. A number of federal courts have rejected on equal protection grounds residency requirements imposed on candidates, *Bolanowski v. Raich,* 330 F.Supp. 724 (E.D.Mich.1971) (three-year residency requirements for mayoral candidates violated Equal Protection Clause); *Green v. McKeon,* 335 F.Supp. 630 (E.D.Mich.1971) (three-judge panel) (three-year residency requirement for City Charter Revision Commission was unconstitutional); *McKinney v. Kaminsky,* 340 F.Supp. 289 (M.D.Ala.1972) (five-year residency requirement for County Commissioner violated Equal Protection Clause); *Wellford v. Battaglia,* 485 F.2d 1151 (3d Cir.1973) (five-year residency requirement for office of Mayor violated Equal Protection Clause).

Some federal courts have gone the other way and upheld residency requirements, *e.g., Beil v. City of Akron,* 660 F.2d 166, 168 (6th Cir.1981); *Hadnott v. Amos,* 320 F.Supp. 107 (M.D.Ala.1970) (three-judge panel), *aff'd mem.,* 401 U.S. 968, 91 S.Ct.

1189, 28 L.Ed.2d 318 (1971); [*Walker v. Yucht,* 352 F.Supp. 85 (D.Del.1972) (three-judge panel);] *Draper v. Phelps,* 351 F.Supp. 677 (W.D.Okla.1972) (three judge panel).

The weighing process in each case is fact sensitive. A fundamental right is at stake and it is necessary to weigh against its impairment the governmental interests asserted in support of the classification.

In the present case the State argues that "there is nothing in the State constitutional residency requirement that restricts plaintiffs' ability to express themselves.... Even assuming, *arguendo,* that candidates realistically have more opportunity to be heard, as plaintiffs contend, this alleged increased opportunity does not amount to any abridgement of federally protected rights. The federal Constitution does not guarantee anyone, candidates or otherwise, the right 'to be heard'. See *Minnesota State Board for Community Colleges v. Knight,* 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984)." (Attorney General's Brief at pp. 9,10).

The State also argues that "plaintiffs assert only that their right to *intrastate,* not *interstate,* travel has been burdened. The distinction is an important one because a restriction which encroaches upon one's right to travel between the states is analyzed under the stricter 'compelling interest' test (See *Chimento v. Stark,* [353 F.Supp. 1211, 1214 (D.N.H.1973), *aff'd,* 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973) ], citing *United States v. Guest,* 383 U.S. 745, 759, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), and *Dunn v. Blumstein,* 405 U.S. 330, 341–342, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972)), whereas the Third Circuit, in *Lutz v. City of York,* 899 F.2d 255 (3d Cir.1990), held that the lesser intermediate scrutiny standard applies to restrictions on a person's ability to travel within a state". (Attorney General's Brief at p. 10).

The State may well be correct in its statement of these general principles. The fundamental right which is threatened by the one year residency requirement, however, is not the right to free speech or the right to travel. The fundamental right at issue is the combined right of persons to run for public office and the right of voters to vote for candidates of their choice. Impairment of that combined right, as recited above, is subject to strict scrutiny and can only be impaired if the impairment furthers significant State interests.

The State advances three asserted interests that are furthered by the one-year residency requirement: i) "... the one-year requirement allows the people of New Jersey the necessary opportunity to become familiar with a potential candidate" (Attorney General's Brief at p. 14), ii) "preventing 'political carpet bagging.'" (Attorney General's Brief at p. 11) and iii) "... for the benefit of all the State's residents, [the residency requirement] allows a candidate the opportunity to become familiar with the issues and concerns that are important to the people he or she seeks to represent." (Attorney General's Brief at p. 14).

In a number of cases these reasons have not been found to represent compelling state interests when weighed against residency requirements imposed upon voters or potential candidates. One court found it "superfluous to require five years county residence in order for a candidate to acquaint himself or herself with the needs and obligations of the county and the voters."

As to the ability of voters to familiarize themselves with the candidates the same court stated:

> On the other side of the coin, requiring five years' county residence appears unrelated to whether the voters could satisfy themselves of the candidate's

sincerity and knowledgeableness. The population of Westchester County is so large that such a provision would not insure that the voters would know the various positions which a person might take upon becoming a candidate for public office.

*Billington v. Hayduk*, 439 F.Supp. 975, 979 (1977), *aff'd*, 565 F.2d 824 (2d Cir. 1977).

In *Dunn* 405 U.S. 330, 92 S.Ct. 995, *supra*, the Supreme Court rejected both the prevention of fraud and ensuring knowledgeable voters as sufficiently compelling to justify a voter residency requirement. As to the prevention of fraud the Court stated:

> Preventing fraud, the asserted evil that justifies state lawmaking, means keeping nonresidents from voting. But, by definition, a durational residence law bars newly arrived residents from the franchise along with nonresidents. The State argues that such sweeping laws are necessary to prevent fraud because they are needed to identify bona fide residents. This contention is particularly unconvincing in light of Tennessee's total statutory scheme for regulating the franchise.

*Id.* at 345, 92 S.Ct. 995.

As to ensuring knowledgeable voters the Court stated:

> The argument that durational residence requirements further the goal of having 'knowledgeable voters' appears to involve three separate claims. The first is that such requirements 'afford some surety that the voter has, in fact, become a member of the community.' But here the State appears to confuse a bona fide residence requirement with a durational residence requirement. As already noted, a State does have an interest in limiting the franchise to bona fide

members of the community. But this does not justify or explain the exclusion from the franchise of persons, not because their bona fide residence is questioned, but because they are recent rather than longtime residents.

The second branch of the 'knowledgeable voters' justification is that durational residence requirements assure that the voter 'has a common interest in all matters pertaining to (the community's) government. . . .' By this, presumably, the State means that it may require a period of residence sufficiently lengthy to impress upon its voters the local viewpoint. This is precisely the sort of argument this Court has repeatedly rejected.

.　　.　　.　　.　　.

Finally, the State urges that a longtime resident is 'more likely to exercise his right (to vote) more intelligently. To the extent that this is different from the previous argument, the State is apparently asserting an interest in limiting the franchise to voters who are knowledgeable about the issues. In this case, Tennessee argues that people who have been in the State less than a year and the county less than three months are likely to be unaware of the issues involved in the congressional, state, and local elections, and therefore can be barred from the franchise. We note that the criterion of 'intelligent' voting is an elusive one, and susceptible of abuse. But without deciding as a general matter the extent to which a State can bar less knowledgeable or intelligent citizens from the franchise, cf. *Evans v. Cornman*, 398 US, at 422, 26 L.Ed.2d at 374; *Kramer v. Union Free School District*, 395 U.S. at 632, 23 L.Ed.2d at 592; *Cipriano v. City of Houma*, 395 US, at 705, 23 L.Ed.2d at 651, we conclude that

durational residence requirements cannot be justified on this basis.

*Id.* at 354–357, 92 S.Ct. 995

In the circumstances that prevail in the present case the reasons that the State advances to justify the one-year residency requirement are particularly uncompelling. The State is divided into forty districts from each of which there are elected one Senator and two Assembly members. The cities of Newark and Jersey City encompass several districts. Geographical regions of the State consist of many districts. As demonstrated by the recent redistricting that followed the year 2000 census, the boundaries of these districts are not firmly established. Rather they are subject to revision each ten years to ensure that they meet one-person one-vote requirements and other constitutional and statutory mandates.

It requires a considerable stretch of the imagination to find that when a person moves from one district to another it requires a year to prevent "carpet bagging", to enable the person to become familiar with the new district and for the voters to recognize the new resident of the district. The insubstantiality of these purported State interests is illustrated by the circumstances of the parties in this case.

Schwartz, born and raised in West Paterson which was in former District 35, moved to Little Falls, which was in former District 34. Little Falls is now in New District 40. Thus under either the old or new district alignment Schwartz failed to meet the one-year residency requirement. Had he moved to Hawthorne or Paterson, which are both in the new 35th District with his old town of West Paterson he would have been permitted to run for the General Assembly. Hawthorne and Paterson have less in common with West Paterson than does Little Falls because Little Falls is part of the Passaic Valley commu-

nity with West Paterson. This is the case even though presumably Schwartz has less knowledge of the local issues of Hawthorne and Paterson than he does of Little Falls and even though the residents of Hawthorne and West Paterson have less knowledge of him than do the residents of Little Falls.

Zecker, a resident of Clifton, represented District 34 which included Little Falls and Clifton for the past 20 years. Had he decided to move to Little Falls within one year of the upcoming general election, he would not be able to run for the General Assembly because Little Falls is not in the new District 34. This would result despite the fact that Zecker is totally familiar with the local issues of Little Falls and the electorate is fully familiar with the person who has been representing it for twenty years.

The lack of substance to the State's interest in the one-year residency requirement becomes more apparent when one considers the circumstances that prevail in New Jersey's two major cities—Newark and Jersey City. Each is split into three separate legislative districts. District lines run down the middle of streets and through the heart of local neighborhoods. Population mobility is high in these cities, particularly in Newark which has a high percentage of poor and minority residents. Simply by moving across the street a person could find himself or herself subject to the one-year residency requirement.

To sum it up, New Jersey's one-year residency requirement for candidates for the State Senate and State Assembly does not survive a strict scrutiny analysis.

The State relies heavily upon two cases to sustain its position, *Sununu v. Stark*, 383 F.Supp. 1287 (D.N.H.1974) (three judge panel), *aff'd*, 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 435 (1975) and *Chimento v. Stark*, 353 F.Supp. 1211 (D.N.H.1973)

(three-judge panel), *aff'd*, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973). In those cases the Supreme Court summarily affirmed the decisions of the three-judge district courts which upheld the seven-year residency requirements set forth in the New Hampshire Constitution for state governor and state senator.

In *Chimento*, which was followed in *Sununu*, the three-judge panel held that "[w]here, as here, the law in question poses a barrier to a candidacy of a not unsubstantial segment of the community and, to that degree, limits the voters in their choice of candidates, we held that the stricter standard of review should be applied." *Chimento*, 353 F.Supp. at 1214 (footnote omitted). In the circumstances of that case the court held that the residency requirement passed muster under the strict scrutiny test. However, the circumstances were so different from those that prevail in the present case, the strict scrutiny inquiry leads to different results here. As the court stated in *Chimento*, "Two important and distinguishing aspects of this case ought to be noted. First the seven year durational residency requirement applies only to the Office of Governor and State Senator, the highest elective offices in the State of New Hampshire. The rationale asserted by the State for such a residency requirement carries far greater weight than if applied to candidacies for lesser public offices. In this regard, many of the recent cases which have struck down durational residency requirements as violations of the Equal Protection Clause are to some extent inapposite. . . . A second and important difference between this case and other recent cases is that the residency requirement in question is contained in the Constitution of the State." *Id.* at 1216 (footnotes omitted). The court noted that the seven year residency requirement first appeared in the New

Hampshire Constitution of 1784 and was modeled almost entirely after the Massachusetts Constitution of 1780, which was written primarily by John Adams.

Although the residency requirement at issue in the present case appears in the New Jersey Constitution, that Constitution is of much more recent vintage than New Hampshire's (dating from 1947) and lacks the venerable heritage of New Hampshire's charter. The more critical distinction is that the residency requirement now at issue relates not to the principal State wide offices of the State. Rather it relates to officials elected from political subdivisions of much smaller geographical dimensions, the precise boundaries of which are subject to periodic revision. Distinguishing *Chimento* and *Sununu* the court stated in *Billington v. Hayduk*, 439 F.Supp. at 978 that "I am not here confronted with a state constitutional requirement for 'the highest elective officer in the State' for which '(t)he rationale asserted by the State ... carries far greater weight than if it applied to candidacies for lesser public offices,' ... but rather with that mandated by state statute for a 'lesser public office).' " [3]

## IV. CONCLUSION

New Jersey's one-year residency requirement for candidates for the Senate and General Assembly does not survive the strict scrutiny inquiry and is, therefore, violative of the Constitution's Equal Protection Clause. Consequently the defendants' motion for summary judgment on the third count will be denied. Plaintiffs have not cross-moved for summary judgment, but if such a motion were filed it would most likely be granted.

The court will file an order implementing this opinion.

---

**3.** I follow the reasoning of the district court even though in its opinion affirming the judgment below the Court of Appeals for the Second Circuit stated as to the residency requirement ruling, "... we should indicate that we have grave doubt as to whether this matter is not foreclosed by the action of the Supreme Court in summary affirmances of five and seven-year residency duration statutes in *Sununu ... Kanapaux v. Ellison ...* and *Chimento,*" *Billington v. Hayduk,* 565 F.2d 824, 826 (2d Cir.1977).