Catherine **HEADLEE**, Plaintiff,

v.

**FRANKLIN COUNTY BOARD OF ELECTIONS et al.,** Defendants.

Civ. A. No. 73-373.

United States District Court,
S. D. Ohio, E. D.

Dec. 20, 1973.

---

**1000**

Hubert C. Dutro, Jr., Columbus, Ohio, for plaintiff.

George C. Smith, Pros. Atty. by William B. Shimp, Asst. Pros. Atty., Franklin County, Columbus, Ohio, for defendants.

Before PECK, Circuit Judge, KINNEARY, Chief District Judge, and RUBIN, District Judge.

## OPINION

KINNEARY, Chief District Judge.

Plaintiff in this action seeks declaratory and injunctive relief against Ohio's statutory requirement that candidates in village [1] elections be residents of the village for one year prior to the date of the election.

This matter is before the Court on cross motions for summary judgment under the provisions of Rule 56 of the Federal Rules of Civil Procedure. This action was commenced under the provisions of Title 42, United States Code, Section 1983. The Court has jurisdiction over the subject matter of this action under the provisions of Title 28, United States Code, Section 1343. The material facts are not in dispute.

Catherine Headlee currently resides at 7340 Brand Road. She has lived at this address for more than eighteen years. On February 21, 1973, the Village Council of the Village of Dublin, Ohio passed an ordinance annexing her land and residence into the Village of Dublin. This annexation was initiated by the filing of

---

1. A village is a municipal corporation with a population and number of resident electors of under five thousand. *See* Ohio Rev.Code Ann. § 703.01.

a petition seeking annexation to the Village of Dublin signed by a majority of the landowners in the area with the Franklin County Commissioners. Catherine Headlee signed this petition. The annexation became effective on March 21, 1973. As a result of this annexation, the number of qualified electors[2] within the Village of Dublin increased by 116.

On August 7, 1973 plaintiff Headlee filed a nominating petition with the Franklin County Board of Elections for the office of Village Council for the Village of Dublin. This nominating petition was in all respects valid under the applicable Ohio statutes. The next day, Carol Bland also filed a valid nominating petition for the office of Village Council for the Village of Dublin. Like plaintiff Headlee, Bland's property had been annexed by the Village of Dublin upon request of a majority of landowners in her neighborhood. This annexation became effective on December 6, 1972 and increased the number of qualified electors within the Village of Dublin by 226. Bland has resided at her current residence for over five years. She did not sign the petition requesting annexation.

The Village Council for the Village of Dublin consists of six seats. *See* Ohio Rev.Code Ann. § 731.09. Four of these seats were up for election on November 6, 1973. The term of office is four years. The number of qualified electors within the Village of Dublin on election day was 714. This figure includes the 342 qualified electors added to the Village of Dublin as a result of the two annexations discussed above.

On September 10, 1973 the Franklin County Board of Elections ordered the names of plaintiff and Bland removed from the ballot. As a result of this action, only four names[3] remained on the ballot seeking the four seats on the Village Council. The Board held that plaintiff and Bland were not qualified

to seek the office of Village Council solely because of the residency requirement of Section 731.12 of the Ohio Revised Code. That section provides in part that:

> Each member of the legislative authority of a village shall have resided in the village one year next preceding his election, and shall be an elector of the village. . . .

Shortly after this ruling, plaintiff and Bland filed this action. A three judge court was convened pursuant to Sections 2281 and 2284 of Title 28, United States Code. The parties thereafter agreed to the entry of a consent order which granted plaintiff's motion for an interlocutory injunction pending resolution of the case on the merits. As a result of this order, the names of both Headlee and Bland were placed on the election ballot.

Bland was defeated at the election and she was subsequently dismissed at her own request as a party to this action. However, plaintiff Headlee was elected to one of the four seats on the Village Council.

Plaintiff contends that the residency requirement of Section 731.12 of the Ohio Revised Code violates the equal protection clause of the Fourteenth Amendment. We agree.

■ The initial question which we must resolve in this case is to determine what standard of review should be applied to the statute in question. Historically, two standards of review have been applied in cases involving the equal protection clause. Under the first standard of review, a statute does not violate the equal protection clause if it has a reasonable basis or is rationally related to the acheivement of some legitimate state goal. *See, e. g.,* McDonald v. Board of Election Commissions, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). However, where a statute in-

---

2. A qualified elector is defined as a person having the qualifications provided by law to entitle him to vote. *See* Ohio Rev.Code Ann. § 3501.01(J).

3. While the record does not so indicate, these four candidates were apparently the incumbents.

fringes upon a fundamental right or creates a suspect classification, a more stringent standard must be applied. *See, e. g.,* Shapiro v. Thompson, 394 U.S. 618, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Under this second standard of review, the state statute is unconstitutional in the absence of some compelling state interest.

In Bullock v. Carter, 405 U.S. 134, 142–144, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972), the Supreme Court discussed the application of the compelling state interest test to a state statute which required candidates for local offices to pay certain fees as a prerequisite to having their names placed on the primary ballot:

> The initial and direct impact of filing fees is felt by aspirants for office, rather than voters, and the Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review. However, the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters. Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review. McDonald v. Board of Election, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). Texas does not place a condition on the exercise of the right to vote, nor does it quantitatively dilute votes that have been cast. Rather, the Texas system creates barriers to candidate access to the primary ballot, thereby tending to limit the field of candidates from which voters might choose. The existence of such barriers does not of itself compel close scrutiny. Compare Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed. 2d 554 (1971), with Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters.

> . . . . . .

> Because the Texas filing-fee scheme has a real and appreciable impact on the exercise of the franchise, and because this impact is related to the resources of the voters supporting a particular candidate, we conclude, as in *Harper* [Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169], that the laws must be "closely scrutinized" and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster.

The Supreme Court has not yet determined whether the compelling state interest test must be applied to a state statute which establishes a residency requirement for candidates for public office. However, in Green v. McKeon, 468 F.2d 883 (6th Cir. 1972), the court held that a durational residency requirement for candidates classified residents of a city on the basis of recent travel. A residency requirement therefore penalized the exercise of the constitutional right to travel, *see* Dunn v. Blumstein, 405 U.S. 330, 338, 92 S.Ct. 995, 31 L.Ed. 2d 274 (1972), and was unconstitutional in the absence of a compelling state interest.

The court also noted that other courts within this circuit had applied the compelling state interest test to candidate residency requirements because of the impact such restrictions have on the exercise of the right to vote. *See* Mogk v. City of Detroit, 335 F.Supp. 698 (E.D. Mich.1971 (3 judge court); Bolanowski v. Raich, 330 F.Supp. 724 (E.D.Mich. 1971); Stapleton v. Clerk for City of Inkster, 311 F.Supp. 1187 (E.D.Mich. 1970).

▪ The case at issue is somewhat unique in that plaintiff became a resident of the Village of Dublin as a result of an annexation of her property by the village. However, we do not believe that this fact changes the standard of review

which must be applied to a residency requirement for candidates to public office. While a residency requirement does infringe upon the exercise of the constitutional right to travel, it also affects the exercise of the First Amendment rights of freedom of expression and freedom of association. Candidacy for public office, like letter writing and public speaking, is merely another means of communicating one's views to the community. *See* Mancuso v. Taft, 476 F.2d 187, 197–198 (1st Cir. 1973); *see also* Williams v. Rhodes, 393 U.S. 23 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Freedom of association is restricted by a residency requirement because a segment of the community is arbitrarily barred from joining together to elect one of their own number to public office. *See* Mancuso v. Taft, *supra*, at 196. The constitutional rights of freedom of expression and freedom of association may not be infringed in the absence of some compelling state interest.

A candidate residency requirement "has a real and appreciable impact on the exercise of the franchise . . ." Bullock v. Carter, *supra*, 405 U.S. at 144, 92 S.Ct. at 856. In this particular case, almost one half of the Village of Dublin is barred from seeking public office until the next election. This obviously reduces the number of potential candidates for public office and unnecessarily restricts voter choice. We therefore conclude that the compelling state interest test must be applied to a residency requirement for candidates.[4]

The defendants contend that the state has a compelling interest in preventing frivolous, fraudulent or unqualified candidacies for election to public office. We do not dispute this fact. *See* Bullock v. Carter, *supra*, 405 U.S. at 145, 92 S.Ct. 849; Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). However, "a State cannot achieve its objectives by totally arbitrary means; the criterion for differing

treatment must bear some relevance to the object of the legislation." Bullock v. Carter, *supra*, 405 U.S. at 145, 92 S.Ct. at 857. The state cannot adopt a legislative scheme which restricts the exercise of basic constitutional rights where less drastic legislation would satisfy its legitimate interests. Kusper v. Pontikes, 414 U.S. 51, 94 S.Ct. 303, 38 L. Ed.2d 260 (1973).

A residency requirement excludes both legitimate as well as frivolous candidates. It also fails to insure that only qualified candidates seek public office. We recognize that someone who has resided in a community for several years has had more of an opportunity to become acquainted with the problems of the community. However, this fact does not necessarily make him more qualified to hold public office than another candidate who has resided in the community for less than a year. To insure effective government, the community wants candidates who have taken advantage of their opportunities to familiarize themselves with the problems and needs of the community regardless of their length of residence and who have the skills necessary to participate in local government. Whether or not a candidate has the necessary skill and knowledge of the community is a question ultimately for the voters to decide.

> [The defendant] has failed to demonstrate that the election process is inadequate to weed out incompetent, unknowledgeable candidates, insensitive to, and unaware of, the best needs of the community. The hallowed belief in the wisdom and power of the electorate must not be sold short and may not be circumscribed by artificial residence barriers fencing in the right to vote or the right to be a candidate for public office. . . . Thompson v. Mellon, 9 Cal.3d 96, 107 Cal.Rptr. 20, 27, 507 P.2d 628 (1973).

In this case, plaintiff and her neighbors signed petitions seeking annexation

---

4. We of course recognize that not all restrictions on candidacy are subject to this test. *See* Bullock v. Carter, *supra.*

to the Village of Dublin. This fact indicates that they had at least some interest in the Village of Dublin well before the actual annexation. To arbitrarily disqualify one half of the village as unqualified to hold public office under the circumstances of this case is wholly unjustified. The defendant has failed to meet its burden of showing that there is a compelling state interest which justifies a one year residency requirement for candidates.[5] *See* Halliday v. Sorboro, Civil No. C73–181 (N.D.Ohio March 1, 1973). We therefore hold that Section 731.12 of the Ohio Revised Code is unconstitutional in so far as it establishes a one year residency requirement for candidates.

5. We do not reach the question of whether a lesser period of time would be constitutional. We also recognize that other courts have upheld candidate residency requirements of one year or more. *See, e. g.,* Walker v. Yucht, 352 F.Supp. 85 (D.Del. 1972) (three years for state legislature); Cowan v. City of Aspen, 509 P.2d 1269 (Colo.1973) (one year for municipal office). Of course, these cases do not accurately reflect the law of this circuit. *See* Green v. McKeon, *supra.*