The CITY OF AKRON, et al.,
Defendants-Appellants,

v.

Eugene Leonard BELL,
Plaintiff-Appellee.

No. 81–3493.

United States Court of Appeals,
Sixth Circuit.

Aug. 27, 1981.

---

Robert D. Pritt, Richard Cohen, Director of Law, Wayne H. Calabrese, Asst. Pros. Atty., Akron, Ohio, for defendants-appellants.

C. William Goodlet, Akron, Ohio, for plaintiff-appellee.

Before BROWN, KENNEDY and JONES, Circuit Judges.

### ORDER

The City of Akron appeals from the decision of the District Court holding unconstitutional the requirement in Akron's City Charter § 28(1) and Ohio Revised Code § 731.02, that a candidate for City council be a resident of Akron for one year. The further requirement that candidates representing a ward in the city reside for one year in the ward was also found unconstitutional. Council members in Akron are elected both from wards and city-wide.

Plaintiff-appellee has resided in the City of Akron for over one year. However, his residency in Ward 10 commenced February 6, 1981, less than one year before the upcoming election on September 8, 1981. Appellee's nominating petition was originally validated and approved by the Board of Elections. On July 6, 1981, a protest was filed with the Board of Elections on the ground that he had not been a resident of Ward 10 for the past year. The Board allowed the protest and refused to place appellee's name on the primary ballot for the September election. Appellee was, of course, eligible to run for one of the at-large seats since he has resided in Akron for over one year.

The District Court declared the entire one-year durational residency requirements of both charter and statute unconstitutional although only the ward residency requirement was implicated. Appellee's name was ordered placed on the primary ballot. The City of Akron requested and received an injunction from a judge of this Court pending decision of the case on its merits. The case was set before this panel for immediate disposition.

Section 28(1) of the Charter of Akron provides:

1. The Council shall consist of thirteen (13) members, ten (10) of whom shall be elected by wards and three (3) of whom shall be elected by the electors of the City at large. All Councilmen shall have resided in the City of Akron for at least one year next preceding their election, and each ward Councilman shall have resided in his ward for at least one year next preceding his election. A vacancy in the Council shall be caused by the change of residence of a Councilman-at-large from the City, or ward Councilman from his ward. One member of Council shall be elected from each ward.

Section 731.02 of the Ohio Revised Code provides:

Members of the legislative authority at large shall have resided in their respective cities, and members from wards shall have resided in their respective wards, for at least one year next preceding their election. Each member of the legislative authority shall be an elector of the city, shall not hold any other public office, except that of notary public or member of the state militia, and shall not be interested in any contract with the city, and no such member may hold employment with said city. A member who ceases to possess any of such qualifications, or removes from his ward, if elected from a ward, or from the city, if elected from the city at large, shall forthwith forfeit his office.

The District Court relied upon this Court's decision in *Green v. McKeon*, 468 F.2d 883 (6th Cir. 1972). That case, decided in 1972, held unconstitutional a two-year residency requirement for eligibility for elective office of the Charter of the City of Plymouth, Michigan. The Court applied strict scrutiny because the provision "operate[d] to penalize the exercise of the basic constitutional right to travel." *Id.* at 884. Finding a two-year requirement to be unsuited to the City's goals because it was both underinclusive and overinclusive, the Court struck down the charter provision.

Two subsequent summary affirmances by the Supreme Court holding that *seven* year durational residency requirements are not violative of the equal protection clause require that we hold *Green* is no longer controlling precedent and that we reverse the District Court. In *Sununu v. Stark*, 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 434 (1975), *aff'g* 383 F.Supp. 1287 (3-judge panel, D.N.H.1974), the Court affirmed a decision which held that a seven year residency requirement for state senator was constitutional. And in *Chimento v. Stark*, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973), *aff'g* 353 F.Supp. 1211 (3-judge panel, D.N.H. 1973), a similar seven year requirement for governor was upheld. While it is true that

summary affirmances must be read with care, there can be no doubt that these recent cases hold that some durational residency requirements are constitutionally permissible. Such summary dispositions extend only to "the precise issues presented and necessarily decided by those actions," *Metromedia, Inc. v. City of San Diego*, —— U.S. ——, ——, 101 S.Ct. 2882, 2888, 69 L.Ed.2d 800 (1981). That some durational residency requirements are constitutional was essential to disposition of these cases. Thus we are of the opinion that these recent Supreme Court affirmances control the outcome of the present controversy. In each case both infringement of the right to travel and equal protection violations were raised. Although it is not possible to determine on what basis the cases were affirmed it was necessary to reject both to affirm. *Chimento* and *Sununu, supra,* indicate that even seven years is a sufficiently tailored standard to be upheld by the Supreme Court.

We perceive no substantive difference between the governmental interests asserted in those cases and the interests claimed by the City of Akron, including the interests claimed on behalf of its wards, in the present controversy. While it is true that the office of ward councilman is less powerful than either governor or state senator, this is a difference of degree. The smaller governmental unit is equally entitled to protect its smaller self. The interests of the governmental instrumentality are identical in both cases. It may be that the means employed to effectuate those interests will differ depending on the importance of the elective position since the interests of the governmental unit in knowledgeable candidates and knowledgeable voters may be served by differing lengths of durational residency requirements.

█ Additionally, the post-*Green* decisions of the Supreme Court indicate that not every restriction on the right to travel automatically compels application of the strictest scrutiny.[1] Only those classifica-

---

1. Appellee's alleged travel infringement centers on his recent move from one Akron ward to

another. No interstate travel is involved in the present case. The right to travel is, therefore,

tions which serve to "penalize" the exercise of that right trigger the compelling state interest test. *Memorial Hospital v. Maricopa Co.,* 415 U.S. 250, 256, 94 S.Ct. 1076, 1081, 39 L.Ed.2d 306 (1973). As the Court stated in *Sosna v. Iowa,* 419 U.S. 393, 406, 95 S.Ct. 553, 560, 42 L.Ed.2d 532 (1974), its most recent "travel" case, "none of those cases [Supreme Court travel cases] intimated that the States might never impose durational residency requirements, and such a proposition was in fact expressly disclaimed." (Footnote omitted). Since in the instant case the benefit denied is not itself a fundamental right (such as voting) nor a basic necessity of life (such as welfare benefits for the poor), the compelling state interest test is inappropriate.

Restrictions on candidates, as opposed to voters, do not always demand compelling state interest analysis.

> [T]he Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review. However, the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters.... Rather, the Texas system creates barriers to candidate access to the primary ballot, thereby tending to limit the field of candidates from which voters might choose. *The existence of such barriers does not of itself compel close scrutiny.* In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters. (Emphasis supplied; citations omitted).

*Bullock v. Carter,* 405 U.S. 134, 142–43, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972).

*Bullock* held that laws affecting candidates must be " 'closely scrutinized' and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster." *Id.* at 144, 92

S.Ct. at 856. Employing this lesser standard we hold that the one year durational residency requirement of the City of Akron is reasonably necessary to effectuate an important municipal interest. *See Joseph v. City of Birmingham,* 510 F.Supp. 1319 (E.D. Mich.1981).

Finally, even if we were to require the City of Akron to meet the compelling state interest test, we find that test satisfied in the present case. *See Howlett v. Salish and Kootenai Tribes,* 529 F.2d 233 (9th Cir. 1976); *Hadnott v. Amos,* 320 F.Supp. 107 (M.D.Ala.1970), *aff'd mem.,* 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1971); *Joseph, supra.*

The judgment of the District Court is reversed.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I respectfully dissent from the majority's holding that the City of Akron and the State of Ohio have a compelling interest in the imposition and maintenance of a one-year durational residency requirement for city council candidates who represent various wards within the city.

The Supreme Court's summary affirmances in *Sununu v. Stark,* 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 435 (1975) *aff'g* 383 F.Supp. 1287 (3 Judge panel, D.N.H.1974), and *Chimento v. Stark,* 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973), *aff'g* 353 F.Supp. 1211 (3 Judge panel, D.N.H.1973), upholding seven-year residency requirements for election as state senator and governor, respectively, which the majority relies upon are to be "read with care," for they deal only with "the precise issues presented and necessarily decided by those actions," *Metromedia, Inc. v. City of San Diego,* —— U.S. ——, ——, 101 S.Ct. 2882, 2888, 69 L.Ed.2d 800 (1981). Further, they are not to be read "too expansively" for

---

minimally involved. *Sununu, supra,* at 1293. Furthermore, the Supreme Court has indicated that candidate restrictions are to be examined "in a realistic light" to determine "the extent and nature of their impact on voters." *Bullock*

*v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). Appellee was eligible to run city-wide; those voters wishing to support him could have done so in that manner.

they are of limited precedential significance. *Mandel v. Bradley*, 432 U.S. 173, 176, 177, 97 S.Ct. 2238, 2240, 2241, 53 L.Ed.2d 199. It should be noted that the case before us does not deal with a state senator or a governor. It concerns a city charter provision and a state statute with respect to the qualification to seek election as a ward councilman.

If decisions of the Sixth Circuit did not so directly address this issue I feel the panel would have some justification for speculating as to what may have been in the mind of the Supreme Court when the summary affirmances were entered. Until the holding of this Circuit in *Green v. McKeon*, 468 F.2d 883 (6th Cir. 1972) is vitiated by the Supreme Court, I feel bound to follow it.

In my view, in durational residency requirement cases, we continue to be guided by this Court's decision in *Green v. McKeon*. In *Green*, Judge Phillips, writing for the majority, affirmed the district court's application of a strict scrutiny standard of review of durational residency requirements which operate to penalize the exercise of basic constitutional rights. Under this standard, this Court held that the city could not require candidates for city office to be bona fide residents for two years prior to the election. The strict scrutiny standard of review has been consistently applied in this Circuit. *Mogk v. City of Detroit*, 335 F.Supp. 698 (E.D.Mich.1971); *Bolanowski v. Raich*, 330 F.Supp. 724 (E.D.Mich.1971); *Headlee v. Franklin Co. Bd. of Elections*, 368 F.Supp. 999 (S.D.Ohio 1973); *But cf., Joseph v. City of Birmingham*, 510 F.Supp. 1319 (E.D.Mich.1981). In my opinion, any departure from this standard of review at this time is not appropriate.

The City of Akron has not demonstrated a compelling interest in the imposition of its one-year durational residency requirement for ward councilman candidates. The purported purpose of the residency requirement is to facilitate knowledgeable voters and candidates in city elections and to prevent fraudulent and frivolous candidacies. Indeed, this purpose is important and reasonable. However, I am convinced that it does not rise to the level of a compelling interest. The expressed purpose of the city charter section and the state statute in maintaining the residency requirement could be achieved by less restrictive and less drastic means. I emphasize that I do not contend that to accomplish this requires the abolition of all residency requirements as per se unconstitutional. I simply conclude that the one-year residency requirement with which we are here concerned fails the strict scrutiny test.

The effect of the residency requirement on ward council candidates is to prevent individuals from participating in ward council elections even though those persons have worked in or lived in close proximity to the respective ward. Ward council candidates who are fully apprised of the ward's community and neighborhood concerns and who are well-known to the residents of that ward are precluded from entering the election. This result does violence to the stated purposes of the residency requirement and is repugnant to the candidates' constitutional rights of travel and of political expression and association. Additionally, the fundamental right of the voters of Ward 10 to cast their votes for such a candidate is effectively ignored. Therefore, I believe that the residency requirement as applied to ward council candidates unnecessarily burdens constitutionally protected activity, *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), and that the City of Akron's charter and the State of Ohio's statute as applied to ward council candidates are not justified by compelling interests. *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979).

Accordingly, I would affirm the judgment of the district court regarding the application of the residency requirement to ward council candidates for the September 8 primary election in the City of Akron.