NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0415n.06

Case No. 22-5867

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

THOMAS BURRELL,

    Plaintiff - Appellant,

v.

TIPTON COUNTY ELECTION
COMMISSION; JIMMY VANDERGRIFT;
LETITIA WILSON; CHRIS BRENT; KAY
BERGEN; THETA RONE; CINDY PINNER;
MARK GOINS,

    Defendants - Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

Oct 18, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

OPINION

Before: SILER, BATCHELDER, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Thomas Burrell appeals the district court's denial of a temporary restraining order ("TRO") he sought against the Tipton County Election Commission ("the Commission") to secure a place on the November 8, 2022, ballot.[1] Before us at the present time is his emergency motion to stay the district court's order.

Burrell wishes to be a candidate for mayor of Mason, Tennessee, but was barred from candidacy because the Commission determined that he did not meet the residency requirement. Burrell sought a TRO on his 42 U.S.C. § 1983 claims that the residency requirement violates his Fourteenth Amendment right to travel and that the Commission's decision to deny his candidacy violates his First and Fourteenth Amendment right to vote. He additionally argued that the

---

[1] The defendants are the Commission, the Commission's individual members, the County Administrator of Elections, and the State Coordinator of Elections.

Commission's administrative procedures related to his residency determination violate provisions of the Tennessee Open Meetings Act. The district court denied the TRO and Burrell appeals, also filing the instant emergency motion. Because Burrell fails to make a persuasive showing of his likelihood of success on the merits, lacks irreparable injury, and the public interest weighs against granting a TRO, we deny Burrell's emergency motion to stay and affirm the district court's denial of the TRO.

I.

Thomas Burrell was born and raised in Tipton County, Tennessee. He has family members who are long-time residents of Mason, Tennessee, located in Tipton County. Burrell left Tipton County at various points throughout his life, including to attend college and serve in the Vietnam War. In 1989, he established a farming operation in Mason; however, Burrell was absent from Tipton County from 1997 to 2015 for employment reasons. In 2015, Burrell returned to Atoka, Tennessee, also in Tipton County. Burrell claims that he relocated from Akota to Mason and reestablished residence in Mason in May 2022. On June 20, 2022, he registered to vote and filed a timely petition for candidacy as mayor of Mason for the upcoming election on November 8, 2022.

Mason's town charter provides: "No person shall be eligible for the office of Mayor or Alderman unless they are a qualified voter and have been a bona fide resident of the Town for six (6) months preceding the election." DE 2-1, Charter of Mason, PageID 49. On August 22, 2022, the Administrator of Elections for the Tipton County Election Commission sent Burrell a letter stating that the Commission would be holding a meeting on August 31, 2022, to "review [his] residency qualifications for office." DE 2-2, Aug. 22 Letter, PageID 62. The letter reiterated the six-month residency requirement and noted that "there is a question of whether [Burrell] reside[s]

at the address that [he] provided to [the Commission]." *Id.* In the letter, Burrell was informed that he was permitted to attend the meeting, address the Commission, and present information and evidence related to his residency. Burrell attended the August 31 meeting with counsel. He was given until September 9, 2022, to provide any additional evidence supporting his residency in Mason.

It is unclear when exactly Burrell reestablished residency in Mason. Because the election is set for November 8, 2022, Burrell must have established residency by May 8, 2022, to meet the six-month requirement. At the Commission's August 31 hearing, evidence was presented that Burrell signed a residential lease in Mason on May 4, 2022, but did not begin living on the leased property until sometime in June 2022. Burrell connected utilities to the property on May 6, 2022.

On September 9, the Commission met again and determined that Burrell had not met the residency requirements in the charter. The Administrator of Elections sent a letter to Burrell on September 9, 2022, confirming these findings and noting that the decision had been "made in [Burrell's] presence." DE 2-3, Sept. 9 Letter, PageID 63. Burrell claims that he then sent a letter to the Commission requesting that they not print any ballots because he had substantive concerns about how the residency decision was made and procedural concerns about public notice for the Commission meetings.[2]

Burrell filed the present case on September 20, 2022. That same day, he filed a motion for a temporary restraining order ("TRO"). In his various filings, Burrell argued: (1) the six-month residency requirement violated his Fourteenth Amendment right to travel; (2) the Commission's decision violated his First and Fourteenth Amendment right to vote; and (3) the Commission

---

[2] Burrell claims that he attached this letter as Exhibit A to his Emergency Motion before this court, however the referenced exhibit is a different document.

violated provisions of the Tennessee Open Meetings Act in its conduct surrounding the residency determination. For relief, Burrell sought an immediate order that the defendants place his name on the November ballot, invalidation of the six-month residency requirement as unconstitutional, and declaration of the Commission's proceedings in the August 31 and September 9 meetings as void for violation of the Tennessee Open Meetings Act. While the district court considered all of these arguments, the motion for TRO focused on the § 1983 claim concerning the right to vote.

On September 26, 2022, the district court held a hearing which included "limited testimony on the issue of Burrell's residency as well as legal argument regarding the court's jurisdiction." DE 24, Order, PageID 218. At the hearing, the Commission explained that Burrell was never placed on the mayoral ballot due to the residency determination. The defendants also explained relevant Tennessee State Election Commission procedures, which demand that sample ballots be reviewed by the State Commission, approved, and then sent back to the county before printing can begin. Additionally, ballots must be printed and mailed for military and overseas voters at least forty-five days before an election. This means that the latest timely date for mailing of overseas and military ballots was September 24, 2022. Review and approval of the final ballots by the State Commission is required before that date.

On September 27, the district court denied injunctive relief. First, the district court determined that Burrell had not demonstrated a likelihood of success on the merits of either of his federal claims. The court held that the six-month residency requirement was likely constitutional under Supreme Court and Sixth Circuit precedent and would survive application of the relevant standard of review. Further, the court determined that there is no cognizable version of the right to vote that applies to running for office or the right to vote for a specific candidate. Finding no

legitimate federal claims, the district court declined to exercise supplemental jurisdiction over Burrell's state-law claims.

Next, the district court determined that the extremely low likelihood of success on the merits of the constitutional claims allowed it to find that there was no risk of irreparable injury.

Finally, the district court found that the government and the public would suffer irreparable harm if the TRO were issued. Ballots for the November 8, 2022, election have already been printed and sent for overseas and military voters. The court reasoned that issuance of a TRO would require reprinting the entire ballot and re-sending the new ballots, which could cause confusion and potential disenfranchisement of eligible voters. Weighing all the factors, the district court found that Burrell had not met his burden to receive a TRO and denied his motion.

Burrell timely appealed. On September 30, Burrell filed an emergency motion seeking a stay of the district court's order. Because early voting is set to begin on October 19, 2022,[3] Burrell seeks expedited consideration of his appeal.

On appeal, Burrell asserts that the district court applied the wrong standard to his constitutional claims when assessing their likelihood of success on the merits. He claims that the district court professed to apply intermediate scrutiny to his constitutional claim concerning the right to travel, but in practice applied only rational basis review. He claims that this is reversible error and that the district court order should be stayed because Burrell is likely to prevail on the merits if his claims are actually reviewed under intermediate scrutiny. Burrell asks us to enjoin the Commission "from removing Mr. Burrell as a candidate pending appeal or he will be

---

[3] Burrell is inconsistent in his claims about which day early voting begins—sometimes writing October 18, other times October 19. A review of the Tipton County website shows that early voting is set to begin on October 19. https://www.tiptonco.com/news_detail_T34_R974.php.

irreparably harmed due to the inability to campaign" in the days until early voting begins. CA6 R. 8, Emergency Mot., at 8.

## II.

We review a district court's decision regarding a preliminary injunction for abuse of discretion. *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011). Under this standard, we review the district court's legal conclusions de novo and its factual findings for clear error. *Id.* Determination of whether the movant is likely to succeed on the merits is a question of law and is reviewed de novo. *Id.* "However, the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief is reviewed for abuse of discretion." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007).

To determine whether a TRO should be stayed, the court considers the same factors considered in determining whether to issue a TRO or preliminary injunction. *NE Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These factors are: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay. *Id.* When the government is the defendant, the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Importantly, the factors for a TRO are not a checklist, they are "interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

III.

We begin by reviewing de novo whether Burrell is likely to succeed on his constitutional claims. Burrell argues that he is likely to succeed on his § 1983 claim that Mason's six-month residency requirement violates his Fourteenth Amendment right to travel. He states that the proper standard for review is intermediate scrutiny. Burrell further claims that the district court purported to apply intermediate scrutiny but in reality applied rational basis review when it determined that the durational residency requirement was "reasonably necessary" to "accomplish legitimate state objectives." DE 24, Order, PageID 220-221.

Burrell confuses the proper standard of review and its application in his case. While he seeks application of "intermediate scrutiny," that is not the standard applied to durational residency requirements.[4] When the Supreme Court reviews barriers to candidacy for public office, it requires such laws to be "'closely scrutinized' and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster." *Bullock v. Carter*, 405 U.S. 134, 144 (1972). While *Bullock* focused on a Texas filing-fee requirement for candidates, this court has applied *Bullock*'s standard to durational residency requirements for state or municipal office. *Beil v. City of Akron*, 660 F.2d 166 (6th Cir. 1981). *Beil* upheld the City of Akron's requirement that candidates for the position of ward councilman have resided for at least one year in the ward they seek to represent. *Id.* at 167, 169. *Beil* adopted and applied the same standard of scrutiny from *Bullock*, determining that "the one year durational residency requirement of the City of Akron is reasonably necessary to effectuate an important municipal interest." *Id.* at 169. In no case has

---

[4] We can see where the confusion arose. The district court referred to the standard it was applying as "a type of intermediate review between 'rational basis' and 'strict scrutiny.'" DE 24, Order, PageID 220. The district court appeared to be using the term "intermediate" as a descriptive term, not a reference to "intermediate scrutiny," a term of art for constitutional review as used in cases like *Craig v. Boren*, 429 U.S. 190 (1976).

this court or the Supreme Court demanded that municipalities must affirmatively show that durational residency requirements are "substantially related to an important government interest," as Burrell suggests. CA6 R. 8, Emergency Mot., at 7. Rather, the correct standard is whether the requirement is reasonably necessary to effectuate an important government interest.

The district court correctly concluded that Mason's six-month durational residency requirement is reasonably necessary to effectuate an important municipal interest. Municipal interests for durational residency requirements include exposing candidates to the scrutiny of the electorate, protecting the community from outsiders not seriously committed to the community, and having officeholders who are familiar with the problems of the community. *Joseph v. City of Birmingham*, 510 F. Supp. 1319, 1336 (E.D. Mich. 1981). In both *Joseph* and *Beil*, one-year durational residency requirements were upheld as serving these legitimate interests. The Supreme Court has upheld even longer residency requirements for state office. *Sununu v. Stark*, 420 U.S. 958 (1975) (affirming a seven-year residency requirement for state senators); *Chimento v. Stark*, 414 U.S. 802 (1973) (affirming a seven-year residency requirement for governor). While these offices may be more powerful than the position of town mayor, "[t]he smaller governmental unit is equally entitled to protect its smaller self." *Beil*, 660 F.2d at 168. Because the length of the residency requirement for the mayor of Mason is proportional to the power of the position, it satisfies the standard of being reasonably necessary to effectuate the town's interests.[5] Burrell has not established any likelihood of success on the merits of his freedom-to-travel claim.

---

[5] As noted by the district court, the municipality's important interests do not have to be affirmatively displayed in a town or city charter alongside the durational residency requirements. In both *Beil* and *Joseph*, these municipal interests were not explicitly advanced in the charter and in both the one-year durational residency requirements were upheld. *See Beil*, 660 F.2d at 167-68; *Joseph*, 510 F. Supp. at 1337-38.

Next, we review the district court's determination that Burrell did not show a likelihood of success on the merits of his claim that the Commission violated his right to vote by not allowing him on ballot. At the district court, Burrell argued that he would "suffer irreparable injury to [the] fundamental right to vote absent an injunction." DE 2, Mot. for TRO, PageID 42. Burrell does not specify whether he is referring to his right to run for office, his right to vote for himself, or the rights of others to vote for him.

Burrell presents no cognizable constitutional violation of his right to vote. There is no fundamental right to run for office, but "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock*, 405 U.S. at 143. Although laws creating qualifications for candidates will always create some distant impact on available voting choices, would-be candidates cannot reframe every ballot limitation as a voting rights infringement. The types of candidacy laws that trigger Equal Protection include property ownership requirements, *Quinn v. Millsap*, 491 U.S. 95 (1989), and excessive filing-fee requirements, *Bullock*, 405 U.S. at 144, because these laws threaten to discourage less wealthy candidates and give less wealthy citizens fewer opportunities to elect candidates who represent them. However, we have held that requirements that candidates be current on their property taxes are not cognizable violations of the right to vote. *Corrigan v. City of Newaygo*, 55 F.3d 1211 (6th Cir. 1995). There is no bright line distinction, but the relationship between the candidacy restriction and the threat to voters must be close. Candidacy qualifications like reasonable term limits, age requirements, or durational

residency requirements generally do not rise to the level of a constitutional claim. Burrell has shown no likelihood of success on his right-to-vote claim.[6]

IV.

We turn to the second preliminary injunction factor, where we agree with the district court that Burrell has not shown irreparable injury. Burrell asserts that he will be irreparably injured if he is denied the opportunity to campaign. However, Burrell's injuries all stem from his claimed constitutional violations. Denial of an injunction can be the basis for irreparable harm if constitutional rights are at stake, but when the plaintiff has not presented a cognizable constitutional claim, the plaintiff is not entitled to a presumption of irreparable harm. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Beyond the alleged constitutional violations, Burrell has presented no independent physical, financial, reputational, or other injuries that would result from the denial of his candidacy.

V.

Finally, the public interest and the interests of the defendants would be harmed by a stay of the district court's order. In his emergency motion, Burrell mentions public interest only in passing, and his arguments before the district court were a continuation of his claims concerning irreparable injury to his right to vote. However, the Commission has explained the logistical hurdles that an injunction for Burrell would present. We must respect the vital role that state and

---

[6] Burrell raises several state-law claims under the Tennessee Open Meetings Act in his complaint and emergency motion. However, it would be inappropriate for us to review these claims. First, the district court properly declined to exercise supplemental jurisdiction over Burrell's state-law claims in light of his failed federal claims. Second, although Burrell's emergency motion dedicates much argument to the Commission's alleged violations of the Tennessee Open Meetings Act, there is no indication that the proper recourse for lack of public notice would be an injunction ordering the Commission to change the contents of their already-printed ballots. This is an issue that has not been fully briefed or even raised. We therefore decline to review Burrell's state-law claims.

local governments play in administering elections and developing their own laws to make that possible. "A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Ballots for the forthcoming election, which includes the Mason mayoral race, have already been printed and shipped overseas. Issuing new ballots could disrupt the integrity of the voting process and potentially lead to confusion and disenfranchisement of these overseas and military voters who might be confused by receiving a second ballot, might have already submitted the first ballot before receiving the second, and likely would not receive their new ballots in time to cast a timely vote. Additionally, as the district court notes, there could be threats to the integrity of the election process if Burrell were to be placed on the ballot and then later determined to be ineligible. The public interest weighs heavily against injunctive relief for Burrell.

VI.

As Burrell satisfies none of the factors we consider when issuing temporary injunctive relief, we decline to stay the district court's order and affirm.